## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

DWAYNE ANTHONY SCOTT                          CIVIL ACTION

VERSUS                                        NO. 15-404-JWD-EWD

CAROLYN W. COLVIN,
ACTING COMMISSIONER,
SOCIAL SECURITY ADMINISTRATION


### NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on February 24, 2017.


**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**DWAYNE ANTHONY SCOTT**                    **CIVIL ACTION**

**VERSUS**                                          **NO. 15-404-JWD-EWD**

**CAROLYN W. COLVIN,**
**ACTING COMMISSIONER,**
**SOCIAL SECURITY ADMINISTRATION**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Dwayne Anthony Scott ("Plaintiff") brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of Carolyn W. Colvin, acting Commissioner of the Social Security Administration (the "Commissioner"), denying his application for Title II disability insurance.

Based on the applicable standard of review under § 405(g) and the analysis that follows, it is the recommendation of this Court that the Commissioner's decision be **REVERSED** and that this matter be **REMANDED** to the Commissioner for further proceedings consistent with this opinion pursuant to sentence four of 42 U.S.C. § 405(g).

## I.    Procedural Background[1]

On September 16, 2010, Plaintiff filed a prior Title II application for disability insurance benefits alleging disability as of October 13, 2008 based on "crushed" hands, amputated fingers, and damaged nerves on the left and right hands, high blood pressure, carpal tunnel syndrome, ulnar neuropathy, and depression ("Prior Application").  *Scott v. Comm'r of Soc. Sec. Admin.*, 2014 WL

---

[1] References to documents filed in this case are designated by "R. Doc. at [page numbers]."  References to the record of administrative proceedings filed in this case are designated by "AR [page numbers]."

1239307, at *1 (M.D. La. Mar. 25, 2014).[2]  On April 29, 2011, an Administrative Law Judge ("ALJ"), found Plaintiff was not disabled and denied the Prior Application.[3]  Plaintiff appealed the ALJ's decision, which was affirmed by this Court on March 25, 2014.  *See, Scott*, 2014 WL 1239307, at *1.

While the appeal was pending on the Prior Application, Plaintiff protectively filed a second Title II application for disability insurance benefits on October 12, 2012, alleging disability beginning October 13, 2008 (the "Application").[4]  The claim was initially denied on April 5, 2013[5] and Plaintiff filed a request for a hearing, which was held on August 23, 2013.[6]  Plaintiff, represented by counsel, appeared and testified at the hearing.[7]  A vocational expert, Thomas G. Mungall, III, also appeared and testified.[8]  An unfavorable decision was rendered by the ALJ on January 30, 2014[9] and Plaintiff filed an appeal on February 17, 2014.[10]  On April 30, 2015, the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council") denied Plaintiff's request for review of the ALJ's decision.[11]

Thereafter, Plaintiff timely filed a Complaint in this Court on June 23, 2015.[12] Accordingly, Plaintiff exhausted his administrative remedies with regard to the Application before filing this action for judicial review and the ALJ's decision is the Commissioner's final decision for purposes of judicial review.  *See*, 20 C.F.R. § 404.981.

---

[2] *See also,* AR, pp. 34, 181, 199.
[3] AR, pp. 34, 181, 199.
[4] AR, pp. 16, 108-114.  Because the Prior Application was denied by the ALJ on April 29, 2011, Plaintiff subsequently conceded that the ALJ could only make a determination regarding Plaintiff's disability status since April 30, 2011. (AR, pp. 34, 181, 199).
[5] AR, pp. 76-79.
[6] AR, pp. 30-58.
[7] AR, pp. 36-58.
[8] AR, pp. 16, 53-57.
[9] AR, pp. 13-29.
[10] AR, p. 12.
[11] AR, pp. 1-6.
[12] R. Doc. 1.

## II.   Standard of Review

This Court's review of the Commissioner's decision denying disability benefits is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001).  If the Commissioner fails to apply the correct legal standards, or provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal.  *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1981); *Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981).

If substantial evidence supports the Commissioner's findings, they are conclusive and must be affirmed.  *Richardson*, 402 U.S. at 390, 91 S.Ct. at 1422; *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).  "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Bradley*, 809 F.2d at 1057 (quoting *Deters v. Secretary of Health, Educ. & Welfare*, 789 F.2d 1181, 1185 (5th Cir. 1986)).  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.  *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)).  Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side.  *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). In applying the substantial evidence standard the court must review the entire record as a whole, but may not reweigh the evidence, try the issues de novo, or substitute its judgment for that of the

Commissioner, even if the evidence weighs against the Commissioner's decision. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

### III.     The ALJ's Disability Determination

A social security disability claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity.  20 C.F.R. §§ 404.1505, 416.905.  In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process. *See,* 20 C.F.R. § 404.1520(a)(4).  Using the five-step evaluation process, the Commissioner must determine whether: (1) the claimant is currently engaged in substantial gainful activity; (2) the claimant has a severe impairment(s); (3) the impairment(s) meets or equals the severity of a listed impairment in appendix 1, subpart P of 20 CFR part 404; (4) the impairment(s) prevents the claimant from performing past relevant work; and (5) the impairment(s) prevents the claimant from doing any other work. *Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002).

The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability.  If the claimant is successful in sustaining his burden at each of the first four levels then the burden shifts to the Commissioner at step five.  At step five, the Commissioner must prove, considering the claimant's residual functional capacity, age, education, and past work experience, that he or she is capable of performing other work.  20 C.F.R. § 404.1520(g)(1).  If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).

Here, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act from the alleged onset date of October 13, 2008 through January 30, 2014, the date of the ALJ's decision.[13]  At step one of the analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of October 13, 2008.[14]  At the second step, the ALJ found that Plaintiff had the following severe impairments: residual effects of crush injuries to the hands, obesity, and an adjustment disorder with depressed mood.[15]  At step three of the analysis, the ALJ found that Plaintiff's impairments or combination of impairments did not meet or medically equal the required criteria for any listed impairment.[16]  The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform light work, but could only "occasionally push and/or pull; he cannot operate hand controls on hazardous machines but can otherwise use hand controls; he can frequently climb, stoop, kneel, crouch, and occasionally crawl; he can frequently handle and finger with both hands; and he is limited to unskilled work and work with a skill vocational level of no more than SVP 3."[17]  In reaching those conclusions, the ALJ gave "little weight" to the opinion of Plaintiff's treating physician Dr. J. Michael Burdine, a pain management specialist, and gave "great weight" to the opinion of another treating physician, Dr. Sandra Weitz, who opined that Plaintiff had reached maximum medical improvement as of November 2011 and released him to return to work.[18]  Dr. Weitz further found that Plaintiff was capable of light work and had no limitations with the use of his hands other than for lifting and

---

[13] AR, pp. 16, 24.  Although the ALJ concluded that Plaintiff failed to prove that he was disabled "from October 13, 2008, through the date of this decision" (AR, pp. 16, 24), the ALJ recognized that she had no jurisdiction to make a decision regarding Plaintiff's status prior to April 30, 2011, the day after another ALJ denied Plaintiff's Prior Application.  (AR, pp. 18-19).  Because an appeal was still pending on the Prior Application, the ALJ again noted that "the undersigned will only consider [Plaintiff's] status since April 30, 2011."  (AR, p. 20).  The ALJ also found that Plaintiff met the insured status requirements through December 31, 2013.  (*Id.*).
[14] AR, pp. 16, 24.
[15] *Id.*
[16] AR, pp. 18-20.
[17] AR, pp. 20-23.
[18] AR, pp. 20-21.

carrying.[19]  The ALJ explained that she gave Dr. Weitz's medical opinion "great weight" because it is supported by objective findings from a consultative examination performed by Dr. Adeboye A. Francis in February 2013.[20]

Based on the foregoing RFC determination, the ALJ found that Plaintiff could not perform any past relevant work at step four of the analysis.[21]  Proceeding to step five, the ALJ found that based on the testimony of the vocational expert, as well as Plaintiff's age, education, work experience, and RFC, there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform.[22]  The vocational expert testified that someone with Plaintiff's age, education, work experience, and RFC would be able to work as a locker room attendant, ticket taker, and file clerk, and that each occupation had a large number of jobs available in both the local and national economy.[23]  Thus, the ALJ concluded that Plaintiff was not disabled from October 13, 2008[24] through January 30, 2014, the date of the ALJ's decision.

## IV.    Plaintiff's Allegations of Error

Plaintiff alleges that the ALJ committed the following errors that require reversal of the ALJ's decision: (1) the ALJ erred in failing to find Plaintiff's reflex sympathetic dystrophy syndrome/complex regional pain syndrome ("RSDS/CRPS") medically determinable and severe, and in failing to evaluate said syndrome according to Social Security Ruling 03-2p, 2003 WL 22814447 (2003) ("SSR 03-2p"), which errors were harmful and tainted the ALJ's entire assessment; (2) the ALJ erred in her analysis of the medical evidence and/or failed in her duty to develop the record; (3) the ALJ's RFC analysis failed to accurately reflect all of Plaintiff's

---

[19] AR, p. 21.  *See*, AR, p. 286.
[20] AR, p. 21.  *See*, AR, pp. 298-303 and 410-413.
[21] AR, p. 23.
[22] AR, p. 24.
[23] *Id.*
[24] *See* n.13, *supra.*

limitations; and (4) the ALJ erred in determining Plaintiff lacked credibility.[25]  The Commissioner maintains that the decision to deny Plaintiff benefits was supported by substantial evidence and should be affirmed.[26]

## V.    Analysis

### A.  Plaintiff exhausted his administrative remedies with respect to his claim that the ALJ erred by failing to find his RSDS/CRPS medically determinable and severe.

Turning to Plaintiff's first allegation of error, that the ALJ erred in failing to find Plaintiff's RSDS/CRPS[27] medically determinable and severe, it does not appear that Plaintiff initially alleged that he was disabled due to RSDS/CRPS in the Application for disability benefits.  Neither the Application Summary for Disability Insurance Benefits[28] nor the ALJ's January 30, 2014 decision[29] state the disabling conditions alleged in Plaintiff's October 12, 2012 application for disability benefits.  However, the April 5, 2013 Disability Determination Explanation states that, "The individual filed for Initial claim for [sic] disability on 10/04/2012 due to the following illnesses, injuries, or conditions: both hands crushed and fingers amputated, nerve damage."[30]  The April 5, 2013 Notice of Disapproved Claim similarly states, "You said that you became disabled on 10/13/2008 because of both hands crushed and fingers amputated with nerve damage and depression."[31]  Thus, it does not appear that Plaintiff alleged disability due to RSDS/CRPS in the Application.

However, at the August 23, 2013 hearing before the ALJ, Plaintiff's counsel argued that Plaintiff "has reflex sympathetic dystrophy complex regional pain syndrome" and that Plaintiff

---

[25] R. Doc. 16 at 1.
[26] *See generally,* R. Doc. 18.
[27] RSDS/CRPS is a chronic pain syndrome most often resulting from trauma to a single extremity.  SSR 03-2p, 2003 WL 22814447, at *1 (2003).
[28] AR, pp. 108-114.
[29] AR, pp. 13-29.
[30] AR, p. 60.
[31] AR, p. 76.

"has a lot of the characteristics of RSD."[32]  Plaintiff's counsel also reminded the ALJ that, "Social Security has a ruling directed to this impairment . . . ."[33]  In the post-hearing brief submitted to the ALJ, Plaintiff's counsel also argued that Plaintiff was disabled due to RSDS/CRPS.[34]  Further, in a June 19, 2014 brief submitted in support of Plaintiff's appeal to the Appeals Council, Plaintiff's counsel again argued that the ALJ erred by failing to mention Plaintiff's diagnosis of RSDS and by denying a claim for disability "that meets the very definition of the defining regulation, SSR 03-2p."[35]  As explained by the Fifth Circuit, "A claimant fails to exhaust his administrative remedies if does [sic] not raise a claim of error to the Appeals Council before filing suit on that basis."  *McQueen v. Apfel*, 168 F.3d 152, 155 (5th Cir. 1999).  Pursuant to *McQueen*, the Court finds that because Plaintiff argued to the Appeals Council that the ALJ erred by failing to address his RSDS/CRPS, Plaintiff has exhausted his administrative remedies with respect to his claim that he is disabled due to RSDS/CRPS.  As such, the Court can consider Plaintiff's first assignment of error regarding the ALJ's alleged error in failing to find Plaintiff's RSDS/CRPS medically determinable and severe and in failing to evaluate the condition according to SSR 03-2p.

### B.  RSDS/CRPS and SSR 03-2p.

At step two of the sequential evaluation process the Commissioner must determine whether the claimant's "impairment or combination of impairments" is severe.  Here, Plaintiff asserts that the ALJ erred at step two of the analysis by failing to find his RSDS/CRPS a medically determinable and severe impairment.  Because RSDS/CRPS is often a notoriously difficult and elusive diagnosis to make, the Commissioner has adopted a specific set of rules associated with the evaluation and assessment of the condition.  *Hoyle v. Colvin*, 2014 WL 7369428, at *5 (D.S.C.

---

[32] AR, pp. 35-36.
[33] AR, p. 36.
[34] AR, pp. 181-86.
[35] AR, p. 205.

Dec. 23, 2014); *Songer v. Astrue*, 2011 WL 849961 (S.D. Ind. Mar. 9, 2011).  These rules are set forth in Social Security Ruling 03-2p, which explains that RSDS/CRPS is a "chronic pain syndrome most often resulting from trauma to a single extremity."  SSR 03-2p, 2003 WL 223999117, at *1 (2003).  SSR 03-2p further explains that some of the signs and symptoms of RSDS/CRPS include chronic pain that is out of proportion to the injury and the presence of one or more signs in the affected extremity of swelling, changes in color, changes in texture, changes in temperature, osteoporosis, abnormal hair or nail growth, and/or involuntary movements of the affected region of the initial injury.  2003 WL 223999117, at *2.

In addition to setting forth the diagnostic criteria for RSDS/CRPS, SSR 03-2p provides specific guidance regarding how RSDS/CRPS is identified as a medically determinable impairment.  *See,* 2003 WL 223999117, at *3-*4.  According to SSR 03-2p, "When longitudinal treatment records document persistent limiting pain in an area where one or more of these abnormal signs has been documented at some point in time since the date of the precipitating injury, disability adjudicators can reliably determine that RSDS/CRPS is present and constitutes a medically determinable impairment."  2003 WL 223999117, at *4.  However, "It may be noted in the treatment records that these signs are not present continuously, or the signs may be present at one examination and not appear at another.  Transient findings are characteristic of RSDS/CRPS, and do not affect a finding that a medically determinable impairment is present."  *Id*.  SSR 03-2p further warns that, "[C]onflicting evidence in the medical record is not unusual in cases of RSDS due to the transitory nature of its objective findings and the complicated diagnostic process involved."  2003 WL 223999117, at *5.  As such, "Medical opinions from treating sources about the nature and severity of an individual's impairment(s) are entitled to deference and may be entitled to controlling weight."  *Id*.

SSR 03-2p also provides that, "Claims in which the individual alleges RSDS/CRPS are adjudicated using the sequential evaluation process, just as for any other impairment." 2003 WL 223999117, at *6. Since a variety of symptoms can be associated with RSDS/CRPS, "once the disorder has been established as a medically determinable impairment, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities." *Id*. While symptoms alone cannot be the basis for finding a medically determinable impairment, "[O]nce the existence of a medically determinable impairment has been established, an individual's symptoms and the effect(s) of those symptoms on the individual's ability to function must be considered both in determining impairment severity and in assessing the individual's residual functional capacity (RFC), as appropriate." *Id*. "If the adjudicator finds that pain or other symptoms cause a limitation or restriction having more than a minimal effect on an individual's ability to perform basic work activities, a 'severe' impairment must be found to exist." *Id*. (*citing* SSR 96-3p, "Titles II and XVI: Considering Allegations of Pain and Other Symptoms in Determining Whether a Medically Determinable Impairment is Severe" and SSR 96-7p, "Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements").

**C. The ALJ erred at step two of the sequential evaluation process by failing to find Plaintiff's RSDS/CRPS is a medically determinable impairment and by failing to evaluate the condition in accordance with SSR 03-2p.**

Plaintiff argues that the ALJ erred at step two of the sequential evaluation process by failing to find that Plaintiff's RSDS/CRPS is medically determinable and severe.[36] Plaintiff asserts that he was diagnosed with RSDS/CRPS by Dr. John Michael Burdine, a pain management specialist

---

[36] R. Doc. 16 at 4-5.

and his treating physician, in 2012 and 2013.[37]   Plaintiff alleges that the record supports this diagnosis because he has suffered from severe hand pain and more than one of the clinical signs of RSDS/CRPS, including swelling, sweating, and involuntary movements such as "hand locking," since the 2008 injury to his hands.[38]   Although these findings permit evaluation of his claim under SSR 03-2p, Plaintiff asserts that the ALJ erred by failing to discuss his RSDS/CRPS diagnosis or whether it was a severe impairment at step two of the sequential evaluation process.[39]

Without addressing Plaintiff's RSDS/CRPS diagnosis, the Commissioner asserts that, "Because the ALJ properly found that Plaintiff had a combination of severe impairments at step two and proceeded to step five to determine that Plaintiff was not disabled, the proper focus here is the ALJ's RFC assessment."[40]   The Commissioner contends that substantial evidence supports the ALJ's RFC assessment because it is based on all of the relevant medical evidence and accounts for all of Plaintiff's medical conditions.[41]   The Commissioner further asserts that even if the Court finds the ALJ erred by failing to consider SSR 03-2p, Plaintiff has failed to demonstrate the necessary prejudice to warrant remand.[42]   The Commissioner argues that, "Considering that the ALJ recognized the 'residual effects of crush injuries' as a severe impairment, and sufficiently accounted for it, along with Plaintiff's alleged chronic pain, in the RFC, Plaintiff has not shown that there is a 'realistic possibility' that the ALJ would have reached a different result using SSR 03-2p."[43]

---

[37] R. Doc. 16 at 4 (citations omitted); *See*, AR, pp. 404, 408.
[38] R. Doc. 16 at 5 (citations omitted).
[39] R. Doc. 16 at 4-5.
[40] R. Doc. 18 at 3 (citation omitted).
[41] R. Doc. 18 at 4 (citations omitted).
[42] R. Doc. 18 at 18; *See, Shave v. Apfel*, 238 F.3d 592, 596 (5th Cir. 2001) (citing *Newton v. Apfel*, 209 F.3d 232, 459 (5th Cir. 1994) (requiring "a showing that the claimant was prejudiced by the agency's failure to follow a particular rule before such a failure will be permitted to serve as the basis for relief from an ALJ's decision.")).
[43] R. Doc. 18 at 18 (citation omitted).

1.  **The medical records show that Plaintiff was diagnosed with RSDS/CRPS in August 2012.**

The record establishes that Plaintiff was diagnosed with RSDS/CRPS in August 2012 by Dr. John Michael Burdine, Plaintiff's treating physician and a pain management specialist, and that Plaintiff alleged that he was disabled due to RSDS/CRPS at the August 23, 2013 hearing before the ALJ[44] and in a post-hearing brief.[45]  Yet, RSDS/CRPS does not appear in the ALJ's sequential analysis at step two as either a severe or a non-severe impairment, and the ALJ does not mention RSDS/CRPS or SSR 03-2p anywhere in the opinion.  Dr. Burdine first diagnosed Plaintiff with "(337.21): RSD Upper Limb - Uncontrolled" and "(338.29): Chronic Pain – Uncontrolled" on August 8, 2012.[46]  Dr. Burdine had previously prescribed Tramadol to help manage Plaintiff's hand pain,[47] which medication was continued after the August 8, 2012 visit.[48]  During a follow-up visit on November 5, 2012, Dr. Burdine noted that Plaintiff had bilateral hand swelling and limited range of motion in his fingers, concluding that, "At this point the patient has a complex regional pain syndrome not otherwise specified to his hands bilaterally."[49]  Although Plaintiff was already taking Tramadol, Lyrica, Cymbalta, and using Voltaren Gel for his hand pain, Dr. Burdine decided to try a new pain medication and wrote Plaintiff a prescription for Nucynta.[50]  On January 28, 2013, Dr. Burdine examined Plaintiff and again noted that Plaintiff had swelling in both hands, explaining that, "there is mild swelling of the tissue and he does have some hyperesthesia[51] as to

---

[44] AR, pp. 35-36.
[45] AR, pp. 181, 183.
[46] AR, pp. 272-73.
[47] AR, pp. 277-78.
[48] AR, pp. 272-73.
[49] AR, pp. 330, 332.
[50] AR, pp. 329, 331-32.
[51] Hyperesthesia is excessive physical sensitivity, especially of the skin.  *See*, AR, p. 404 ("[Plaintiff] has very significantly increased sensitivity to the hands (what we would call hyperesthesia) . . . .").

his hand and he wears a glove to both hands."[52]  At that time, Dr. Burdine continued Plaintiff's daily medications, which included Voltaren Gel, Lyrica, Cymbalta, Nucynta, and Tramadol.[53]

On February 13, 2013, Dr. Adeboye A. Francis performed a consultative exam of Plaintiff at the request of the Commissioner.[54]  During the exam, Dr. Francis found that Plaintiff had normal range of motion in his hands and assessed Plaintiff with bilateral hand pain, depression, and morbid obesity.[55]  Dr. Francis further noted, "No atrophy or fasciculations, decreased grip and grasp strength bilateral hands."[56]  On April 3, 2013, Dr. Francis wrote an addendum to his February 13, 2013 report, clarifying that, "The CNS exam showed decreased grip and grasp strength bilateral hands which means right and left hands.  However, there was 3-4/5 motor bilateral hands with decreased fine dexterous movements and ability.  The ROM is for both hands."[57]

When Plaintiff returned to Dr. Burdine on March 25, 2013, Dr. Burdine noted Plaintiff's prior diagnoses of hand joint pain, chronic pain, and "RSD Upper Limb," but also noted that, "[Plaintiff's] pain is significantly better.  He still has to wear gloves they're [sic] still swelling of his hands he still has been obtained [sic] with partial amputation of his fingers and inability to use his hands."[58]  Plaintiff returned for a follow-up visit on June 26, 2013 and Dr. Burdine again noted Plaintiff's prior diagnoses of joint pain, chronic pain, and "RSD Upper Limb."[59]  On June 27, 2013, Dr. Burdine completed a Functional Capacity Assessment of Plaintiff, which asked for a list of Plaintiff's diagnoses and any clinical signs or laboratory findings that support his impairments.[60]

---

[52] AR, pp. 266, 268.  As explained by the ALJ in her January 30, 2014 opinion, "The Claimant has been prescribed a right hand brace and wears compression gloves on both hands to relieve swelling."  (AR, p. 21).
[53] AR, pp. 265, 268.
[54] AR., pp. 298-303.
[55] AR, pp. 298-303.
[56] AR, p. 302.
[57] AR, p. 413.
[58] AR, pp. 360-64.
[59] AR, pp. 358-59.
[60] AR, pp. 398-401.

Dr. Burdine responded by writing, "RSD upper extremity 337.21, Hand pain 719.44. Amputation of fingers in bilateral hands, swelling hands, limited ROM/grip fingers, hand hyperesthesias [sic]."[61]   Nearly a year later, Dr. Burdine wrote the following in a March 25, 2014 Medical Statement:

> [Plaintiff's] hands are swollen, they are painful, he has to constantly wear compression gloves to keep them from swelling uncontrollably, he has very significantly increased sensitivity to the hands (what we would call hyperesthesia) and he has almost no use of either hand other than rudimentary function. . . . He has developed a chronic pain syndrome with associated depression and we are going to be referring him for counseling as well.[62]

As Plaintiff points out, no examining or treating physician has contradicted Dr. Burdine's opinion that Plaintiff had developed RSDS/CRPS by August 8, 2012.[63]   Dr. Sandra Weitz, who treated Plaintiff from March 30, 2009 through November 7, 2011,[64] found that as of November 7, 2011, "Mr. Scott is at MMI.[65]   He is released to work according to his FCE. There is really no reason that he cannot work—his perception of his disability greatly exceeds his real limitation."[66] This assessment, however, pre-dates Dr. Burdine's diagnosis of RSDS/CRPS on August 8, 2012.[67] Further, SSR 03-2p specifically provides that, "It is characteristic of this syndrome that the degree of pain reported is out of proportion to the severity of the injury sustained by the individual."  2003 WL 22814447, at *1 (2003).   The Court also notes that despite the foregoing assessment that Plaintiff's "perception of his disability greatly exceeds his real limitation," Dr. Weitz changed Plaintiff's medications on November 7, 2011 by writing Plaintiff a prescription for Hydrocodone-

---

[61] AR, p. 401.
[62] AR, pp. 403-04.
[63] R. Doc. 16 at 4.
[64] AR, pp. 285-87.
[65] The ALJ explained that "MMI" stands for "maximum medical improvement."  (AR, p. 21).
[66] AR, p. 286.
[67] AR, p. 272.

Acetaminophen, a narcotic pain reliever.[68]  The medical records also show that Plaintiff stopped treating with Dr. Weitz in January 2012 when his workers' compensation benefits ended because Dr. Weitz was an out-of-network provider on his new insurance.[69]  Thus, though the ALJ afforded Dr. Weitz's opinion great weight, Dr. Weitz never treated Plaintiff after he was diagnosed with RSDS/CRPS in August 2012.

Because Plaintiff stopped treating with Dr. Weitz, Plaintiff had an initial visit with Dr. J. George Jiha at the Spine Diagnostic and Pain Treatment Center on January 30, 2012, during which Plaintiff was diagnosed with uncontrolled hand joint pain and prescribed Lortab.[70]  During a follow-up visit on March 8, 2012, Dr. Jiha again diagnosed Plaintiff with uncontrolled hand joint pain and prescribed Plaintiff Norco instead of Lortab.[71]  When Plaintiff returned to the Spine Diagnostic and Pain Treatment Center for a follow-up visit on May 10, 2012, he was diagnosed with hand joint pain by Dr. John Braswell, whose electronic signature appears on the treatment note from that date.[72]  Although neither Dr. Jiha nor Dr. Braswell noted any swelling in Plaintiff's hands or any of the other abnormal conditions associated with RSDS/CRPS according to SSR 03-2p,[73] these physicians also did not treat Plaintiff after he was diagnosed with RSDS/CRPS in August 2012.

The only physician besides Dr. Burdine to actually examine Plaintiff after Plaintiff was diagnosed with RSDS/CRPS in August 2012 is Dr. Adeboye A. Francis.  At the request of the Commissioner, Dr. Francis performed a consultative exam of Plaintiff on February 13, 2013 and

---

[68] AR, p. 286.
[69] AR, p. 338.
[70] AR, pp. 338-41.
[71] AR, pp. 282-84 and 334-36.
[72] AR, p. 279-81.
[73] *See*, SSR 03-2p, 2003 WL 22814447, at *2 (2003) (swelling, changes in color, changes in texture, changes in temperature, osteoporosis, abnormal hair or nail growth, and/or involuntary movements of the affected region of the initial injury).

assessed Plaintiff as having bilateral hand pain, depression, and morbid obesity.[74]  Dr. Francis did

not mention Plaintiff's RSDS/CRPS diagnosis in his medical report, nor did Dr. Francis note any

of the symptoms associated with RSDS/CRPS, such as swelling.[75]   However, SSR 03-2p

specifically cautions that, "Transient findings are characteristic of RSDS/CRPS, and do not affect

a finding that a medically determinable impairment is present."  SSR 03-2p, 2003 WL 22814447,

at *4 (2003).  Thus, the fact that Dr. Francis did not note any symptoms of RSDS/CRPS during

his consultative examination does not necessarily contradict Dr. Burdine's RSDS/CRPS

diagnosis.[76]

## 2.   Plaintiff's RSDS/CRPS is a medically determinable impairment pursuant to SSR 03-2p.

Several courts have held that when a plaintiff has been diagnosed with RSDS/CRPS by

two or more physicians, a medically determinable impairment has been established and an ALJ's

failure to address RSDS/CRPS during the sequential evaluation process constitutes reversible

error.  *See*, *Mangus v. Astrue*, 2010 WL 2403959, at *3 (N.D. Tex. June 15, 2010) (citing *Bernstein

v. Astrue*, 2010 WL 746491, at *5 (M.D. Fla. Mar. 3, 2010)) (plaintiff's RSD was a medically

determinable impairment because at least two physicians had diagnosed plaintiff with RSD);

*Bernstein*, 2010 WL 746491, at *5 (a medically determinable impairment had been established

where two physicians and an adjudicator had opined that plaintiff suffered from RSD); *See also,

Welch v. Colvin*, 2015 WL 4940666, at *4-*5 (S.D. Miss. Aug. 19, 2015) (the ALJ erred by failing

to evaluate plaintiff's RSDS/CRPS in compliance with SSR 03-2p where three physicians had

diagnosed plaintiff with RSDS/CRPS); *Hawkes v. Colvin*, 2014 WL 129341, at *5 (S.D. Ga. Jan.

---

[74] AR, pp. 298-302 and 410-413.

[75] AR, pp. 301-03; *See*, SSR 03-2p, 2003 WL 22814447, at *2 (2003).

[76] The Court notes that in an April 3, 2013 addendum to his original assessment, Dr. Francis clarified that, "The CNS exam showed decreased grip and grasp strength bilateral hands which means right and left hands.  However, there was 3-4/5 motor bilateral hands with decreased fine dexterous movements and ability.  The ROM is for both hands." (AR, p. 413).

14, 2014) (plaintiff's RSD was a medically determinable impairment where plaintiff was diagnosed with RSD by four treating physicians and had at least four clinically documented signs of RSD); *Volk v. Astrue*, 2012 WL 4466480, at *4 n.4 (M.D. Fla. Sept. 27, 2012) (finding the ALJ erred by failing to evaluate plaintiff's RSDS in accordance with SSR 03-2p where two treating physicians had diagnosed plaintiff with RSDS); *Hill v. Astrue*, 2011 WL 679940, at *9-*10 (M.D. Fla. Feb. 16, 2011) (plaintiff's RSD was a medically determinable impairment where the medical record contained numerous diagnoses of RSD by treating and consulting examining physicians).

The fact that only one treating physician has diagnosed Plaintiff with RSDS/CRPS does not require a different outcome in this case.  At least two district courts have found reversible error where an ALJ failed to address RSDS/CRPS and SSR 03-2p in the sequential evaluation process even though only one treating physician had diagnosed the plaintiff with RSDS/CRPS.  *See*, *Hoyle v. Colvin*, 2014 WL 7369428 (D.S.C. Dec. 23, 2014); *Songer v. Astrue*, 2011 WL 849961 (S.D. Ind. Mar. 9, 2011).  In *Hoyle*, although a physician's assistant referred to the plaintiff's RSD as a "questionable diagnosis," the court held, "The Commissioner is required at Step Two to determine if RSD is a severe impairment if the condition is documented in the medical record."  2014 WL 7369428, at *3, *5 (*citing* SSR 03-2p, 2003 WL 223999117, at *4 (2003)).  The *Hoyle* court further found that, "Plaintiff had a definitive diagnosis of RSD by a treating specialist physician, Dr. Weatherby, and clinical findings of severe pain and swelling in the affected extremity with changes in color, temperature and texture."  2014 WL 7369428, at *5 (citations omitted).  Based on this finding, the *Hoyle* court concluded, "The ALJ's failure to address RSD at Step Two in the sequential process (and thereafter) is clear error that requires reversal and remand.  The ALJ's passing reference to Dr. Weatherby's diagnosis at Step Four clearly does not meet the requirements for evaluating RSD set forth in SSR 03-02P."  *Id.* (citations omitted).

The court in *Songer v. Astrue* similarly concluded that remand was required where the ALJ failed to address the fact that the plaintiff had been diagnosed with RSD and failed to evaluate the impact of RSD on the plaintiff's ability to work.  2011 WL 849961, at \*4 (S.D. Ind. Mar. 9, 2011).  In *Songer*, the plaintiff's long-time primary care physician had diagnosed him as suffering from RSD and had prescribed hydrocodone, Xanax, and other medications to treat the plaintiff's symptoms.  2011 WL 849961, at \*1.  The *Songer* court found that the record showed the plaintiff had "consistently complained of, and been treated for, pain in his left arm that began following trauma to that arm."  2011 WL 849961, at \*4.  The court further found that, "[Plaintiff's] treating physician has determined that the cause of this pain is RSD, and there does not appear to be any evidence in the record that contradicts this determination.  Yet the ALJ failed to address the issue of whether Songer has RSD and, if so, how it affects his RFC."  *Id*. (*citing* SSR 03-2p, 2003 WL 22814447 (2003)).  The *Songer* court concluded that the case must be remanded to permit that evaluation to occur.  2011 WL 849961, at \*4.

Like in *Hoyle* and *Songer*, Plaintiff has been diagnosed with RSDS/CRPS by a treating physician, Dr. Burdine, and there does not appear to be any evidence in the record that contradicts this determination.  The medical records show that Plaintiff has consistently complained of, and been treated for, pain in his hands that began following trauma to his hands in October 2008.  *See*, *Songer*, 2011 WL 849961, at \*4 ("The record makes it clear that Songer has consistently complained of, and been treated for, pain in his left arm that began following trauma to that arm.").  Consistent with SSR 03-2p, there is also evidence that Plaintiff has had at least one clinically documented sign of RSDS/CRPS (swelling) since the date of the injury.  SSR 03-2p, 2003 WL 22814447, at \*4 (2003); *See, Hawkes v. Colvin*, 2014 WL 129341, at \*5 (S.D. Ga. Jan. 14, 2014) ("In addition [to being diagnosed with RSD by four treating physicians], consistent with SSR 03-

2p, there is evidence that Plaintiff had at least four clinically documented signs of RSD.") (footnote omitted).  The medical records from October 2009 through June 2013 show that several treating physicians, including Dr. Burdine,[77] Dr. Weitz,[78] and Dr. Rasheed ("Rick") I. Ahmed,[79] found that Plaintiff had persistent swelling in his hands.  While swelling was not listed in every treatment note from the above physicians, as previously discussed, SSR 03-2p specifically provides that, "It may be noted in the treatment records that these signs are not present continuously, or the signs may be present at one examination and not appear at another.  Transient findings are characteristic of RSDS/CRPS, and do not affect a finding that a medically determinable impairment is present."  SSR 03-2p, 2003 WL 22814447, at *4 (2003).  According to SSR 03-2p, "When longitudinal treatment records document persistent limiting pain in an area where one or more of these abnormal signs has been documented *at some point in time* since the date of the precipitating injury, disability adjudicators can reliably determine that RSDS/CRPS is present and constitutes a medically determinable impairment."  *Id.* (emphasis added).  Thus, the abnormal conditions associated with RSDS/CRPS, such as swelling, need not be documented in every treatment note in order to identify RSDS/CRPS as a medically determinable impairment.

Because Plaintiff had a definitive diagnosis of RSDS/CRPS by a treating physician, as well as clinical findings of severe pain and swelling in his hands during the period of alleged disability, the Court finds that Plaintiff's RSDS/CRPS is a medically determinable impairment.  As such, the Court finds that the ALJ erred by failing to address Plaintiff's RSDS/CRPS at step two of the

---

[77] AR, pp. 266, 268, 330, 332, 360-64, 401.

[78] AR, pp., 230, 232, 237, 239-43, 246.

[79] AR, pp. 249-50.  According to the medical records, Dr. Ahmed treated Plaintiff from at least September 1, 2009 through November 19, 2009, prior to the diagnosis by Dr. Burdine of RSDS/CRPS.  (AR. 248-53).  The medical records also show that Dr. Ahmed referred Plaintiff to Dr. Weitz for pain management care in November 2009.  (AR, pp. 247-48).

sequential evaluation process and by failing to evaluate the condition in accordance with SSR 03-2p.

### D. The ALJ's failure to consider Plaintiff's RSDS/CRPS at step two undermines the ALJ's remaining findings of fact and conclusions of law.

The Court further finds that the ALJ's error in failing to evaluate Plaintiff's RSDS/CRPS in accordance with SSR 03-2p at step two of the sequential evaluation process was not harmless because it affected the ALJ's determinations at the remaining steps of the sequential evaluation process. According to SSR 03-2p, "[O]nce [RSDS/CRPS] has been established as a medically determinable impairment, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities." SSR 03-2p, 2003 WL 22814447, at *6 (2003). In the instant case, it is clear that the ALJ did not conduct this analysis because there is no mention of Plaintiff's RSDS/CRPS diagnosis or SSR 03-2p anywhere in the ALJ's decision.[80] Thus, the ALJ did not consider how Plaintiff's RSDS/CRPS affects his RFC. As such, the Court finds that this matter must be remanded for that evaluation. *See*, *Songer v. Astrue,* 2011 WL 849961, at *4 (S.D. Ind. Mar. 9, 2011) ("[T]he ALJ failed to address the issue of whether Songer has RSD and, if so, how it affects his RFC. This case must be remanded to permit that evaluation to occur.") (footnote and internal citation omitted); *Bernstein v. Astrue*, 2010 WL 746491, at *5 (M.D. Fla. Mar. 3, 2010) ("[T]he ALJ failed to address Plaintiff's RSD at any step of the sequential evaluation process here. Accordingly, on remand, the ALJ must evaluate Plaintiff's RSD in accordance with SSR 03-2p, including an evaluation of the intensity, persistence, and limiting effects.") (footnote omitted).

---

[80] *See*, AR, pp. 13-29.

Although the ALJ gave a thorough and detailed summary of the medical evidence, which mentions some of the symptoms of Plaintiff's RSDS/CRPS, courts have held, "the mere mention of a diagnosis and symptoms which may be associated with RSD does not equate to an evaluation of the intensity, persistence, and limiting effects of Plaintiff's RSD." *Bernstein*, 2010 WL 746491, at *5 n.9 (*citing* SSR 03-2p, 2003 WL 22814447 (2003)); *See, Welch v. Colvin*, 2015 WL 4940666, at *5 (S.D. Miss. Aug. 19, 2015) (same); *Hawkes v. Colvin*, 2014 WL 129341, at *6 (S.D. Ga. Jan. 14, 2014) (citation omitted) ("[T]he principle that an ALJ need not specifically refer to a diagnosis does not excuse the ALJ's failure to discuss, or even acknowledge, the evidence in the record of Plaintiff's consistent diagnosis of RSD and the corresponding evaluation of it under the proper legal standard, SSR 03-2p.") (citing *Bernstein*, 2010 WL 746491, at *5 n.9).

Based on the foregoing, the Court finds that the ALJ's failure to evaluate Plaintiff's RSDS/CRPS in accordance with SSR 03-2p at step two of the analysis necessarily undermines the ALJ's determinations regarding the medical opinion evidence, Plaintiff's credibility, and the RFC assessment. *See, Welch v. Colvin*, 2015 WL 4940666, at *5 (S.D. Miss. Aug. 19, 2015) (finding the ALJ's adverse credibility determination was likely the result of his failure to adequately evaluate plaintiff's RSDS/CRPS in accordance with SSR 03-2p); *Hawkes v. Colvin*, 2014 WL 129341, at *6 (S.D. Ga. Jan. 14, 2014) ("If an ALJ fails to 'adequately consider and address RSDS, in accordance with SSR 03-2p,' the ALJ's determinations are undermined with respect to 'medical opinion evidence, [p]laintiff's credibility, and the RFC determination.'") (quoting *Volk v. Astrue*, 2012 WL 4466480, at *4 (M.D. Fla. Sept. 27, 2012)); *Hill v. Astrue*, 2011 WL 679940, at *11 (M.D. Fla. Feb. 16, 2011) ("The ALJ's failure to evaluate RSDS in accordance with SSR 03–2p at step two of the sequential evaluation process necessarily undermines the ALJ's RFC assessment, credibility determination, and hypothetical question to the VE.").

For instance, the Court finds that the ALJ's adverse credibility determination was likely a result of her failure to adequately evaluate Plaintiff's RSDS/CRPS in accordance with SSR 03-02p.  Although the ALJ acknowledged that Plaintiff received treatment for pain management from November 2009 through the date of the ALJ's opinion on January 30, 2014,[81] the ALJ's opinion focused primarily on the lack of objective medical evidence supporting Plaintiff's subjective complaints of pain.[82]  *See, Welch v. Colvin*, 2015 WL 4940666, at *5 (S.D. Miss. Aug. 19, 2015) ("The ALJ's adverse credibility determination was likely a result of his failure to adequately evaluate Plaintiff's RSDS/CRPS in accordance with SSR 03-2p. . . . Much of the ALJ's opinion, in fact, focuses on the lack of objective medical evidence supporting Plaintiff's subjective complaints of pain.").  The ALJ found that, "Despite reports of the claimant's pain rated as an 8/10, his treating source, Dr. Burdine, has described the claimant as not appearing in any acute distress.  This observation and report regarding the severity of the claimant's pain are inconsistent."[83]  The ALJ concluded that this discrepancy lent credence to an observation made by another treating source, Dr. Weitz, on November 7, 2011, who found that Plaintiff's perception of his disability greatly exceeded his real limitations.[84]

Dr. Weitz also opined that Plaintiff had reached maximum medical improvement as of November 2011 and that Plaintiff could return to work because the only limitations assessed with the use of his hands were for lifting and carrying.[85]  The ALJ afforded Dr. Weitz's opinion "great weight" because she found the opinion was supported by objective findings from the consultative examination performed by Dr. Francis in February 2013.[86]  Specifically, the ALJ found that,

---

[81] AR, p. 20.
[82] AR, p. 21.
[83] AR, p. 21.
[84] AR, p. 21 (citing AR, p. 286).
[85] AR, p. 21 (citing, AR, p. 286).
[86] AR, p. 21.

"[Plaintiff's] allegation of hand weakness is not corroborated by objective evidence at the consultative examination in February 2013 with Dr. Francis, M.D.  Objective findings noted normal sensory functioning.  He had normal grip and grasp strength bilaterally.  He demonstrated almost full range of motion.  He was assessed with bilateral hand pain and morbid obesity . . . ."[87] The ALJ further explained that, "By limiting the claimant to a range of light work activities, his difficulty with lifting and carrying due to his obesity and his hands has been specifically taken into consideration and accommodated."[88]

These statements, however, do not reflect a consideration of the progressive and transient nature of RSDS/CRPS.  *Welch v. Colvin*, 2015 WL 4940666, at *5 (S.D. Miss. Aug. 19, 2015). As explained in Social Security Ruling 03-02p, "It is characteristic of [RSDS/CRPS] that the degree of pain reported is out of proportion to the severity of the injury sustained by the individual" and "conflicting evidence in the medical record is not unusual in cases of RSDS due to the transitory nature of its objective findings and the complicated diagnostic process involved."  SSR 03-02p, 2003 WL 22814447, at *1, *5 (2003).  The Court notes that the lack of objective medical evidence and diagnoses was one of the factors cited by the ALJ in assessing Plaintiff's credibility. For instance, the ALJ noted that although Plaintiff testified that he could not lift more than a gallon of milk, when Plaintiff went to the emergency room in May 2013 he had reported lifting a heavy object.[89]  After reviewing this evidence, the ALJ concluded, "It is difficult for the undersigned to accept that [Plaintiff] has had diminished grip and diminished ability to lift and carry when he has

---

[87] AR, p. 22 (citing, AR, p. 301-303).  The undersigned notes that Dr. Francis' report states that he found, "No atrophy or fasciculations, decreased grip and grasp strength bilateral hands."  (AR., p. 302).  In an April 3, 2015 addendum, which was provided to the Court on February 26, 2016, Dr. Francis clarified that, "The CNS exam showed decreased grip and grasp strength bilateral hands which means right and left hands there was 3-4/5 motor bilateral hands with decreased fine dexterous movements and ability.  The ROM is for both hands." (AR, p. 413).  The addendum suggests, contrary to the ALJ's assertion, that Dr. Francis did note some hand weakness.
[88] AR, p. 22.
[89] AR, p. 21; See, AR, pp. 346, 348.

reported otherwise to physicians."[90]  The ALJ further found that Plaintiff's failure to inform an emergency room doctor that he was taking Nucynta[91] and his failure to inform a treating physician that the emergency room doctor had prescribed Norco[92] "do not bolster his credibility."[93] However, like the court in *Welch v. Colvin*, "The Court finds it debatable whether either incident actually discredits Plaintiff's allegations of pain, given the transient nature of RSDS/CRPS."  2015 WL 4940666, at *6 (S.D. Miss. Aug. 19, 2015); *See*, SSR 03-2p, 2003 WL 22814447, at *4 (2003). As in *Welch*, the record in this case contains very little information about either incident, and the ALJ did not question Plaintiff about the incidents at the administrative hearing.  2015 WL 4940666, at *6.

Based on the foregoing, the Court finds that, "[I]t is not clear that the ALJ carefully considered 'the effects of pain and its treatment on [Plaintiff's] capacity to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis," as required by SSR 03-2p.  *Welch v. Colvin*, 2015 WL 4940666, at *6 (S.D. Miss. Aug. 19, 2015) (*quoting* SSR 03-2p, 2003 WL 22814447, at *6 (2003)).  As such, the Court finds that the ALJ's failure to evaluate Plaintiff's RSDS/CRPS in accordance with SSR 03-2p at step two of the sequential evaluation process constitutes clear error requiring reversal and remand.[94]  Because

---

[90] AR, p. 21.

[91] AR, pp. 346-347.

[92] AR, p. 355.

[93] AR, p. 21.

[94] *See, Hoyle v. Colvin*, 2014 WL 7369428, at *5 (D.S.C. Dec. 23, 2014) ("The ALJ's failure to address RSD at Step Two in the sequential process (and thereafter) is clear error that requires reversal and remand."); *Hawkes v. Colvin*, 2014 WL 129341, at *6 (S.D. Ga. Jan. 14, 2014) ("[B]ecause the ALJ failed to discuss Plaintiff's RSD at step two of the sequential analysis, a remand is warranted."); *Hill v. Astrue*, 2011 WL 679940, at *10 (M.D. Fla. Feb. 16, 2011) (finding the ALJ's failure to evaluate the plaintiff's RSD in accordance with SSR 03-2p at step two constitutes reversible error).  *See also, Welch*, 2015 WL 4940666, at *4 ("[T]he ALJ's failure to evaluate Plaintiff's RSDS/CRPS in compliance with SSR 03-2P at any step of the sequential evaluation was error.") (citing cases); *Volk v. Astrue*, 2012 WL 4466480, at *4 (M.D. Fla. Sept. 27, 2012) ("Because the ALJ neither addressed Plaintiff's RSDS specifically nor cited to SSR 03-2p . . . . [T]he Court finds the ALJ's decision is not supported by substantial evidence and is not based upon the proper legal standards.  Therefore, this case must be remanded for further proceedings.") (citations omitted); *Engberg v. Astrue*, 2011 WL 3273959, at *10 (N.D. Fla. June 29, 2011), *report and recommendation adopted*, 2011 WL 3273933 ("[A]lthough the ALJ failed to properly evaluate Plaintiff's RSDS/CRPS and weigh the medical opinions

Plaintiff bears the burden of proving that his RSDS/CRPS is a severe impairment at step two of the sequential evaluation process, the Court offers no opinion as to whether Plaintiff has met his burden of proof based on the medical evidence in the record.  *See, Hawkes v. Colvin*, 2014 WL 129341, at *5 (S.D. Ga. Jan. 14, 2014).  However, the Court finds that in the absence of any such determination by the ALJ, the ALJ's decision is not supported by substantial evidence and is not based upon the proper legal standards.  *See, Hill v. Astrue*, 2011 WL 679940, at *11 n.9 (M.D. Fla. Feb. 16, 2011).  Thus, the Court finds a remand is warranted.[95]

## RECOMMENDATION

For the reasons set forth herein, it is the recommendation of this Court that the decision of the Commissioner be **REVERSED** and this case be **REMANDED** for further proceedings consistent with this opinion pursuant to sentence four of 42 U.S.C. § 405(g).[96]

Signed in Baton Rouge, Louisiana, on February 24, 2017.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

related thereto, the error began at the first stages of the sequential evaluation and—in the undersigned's opinion—affected all subsequent analyses.").

[95] Because the Court has determined that the Commissioner's decision is not supported by substantial evidence due to the ALJ's failure to consider Plaintiff's RSDS/CRPS and SSR 03-2p at step two of the sequential evaluation process, the Court need not reach Plaintiff's remaining assignments of error.  *Hawkes v. Colvin*, 2014 WL 129341, at *6 n.7 (S.D. Ga. Jan. 14, 2014) (citations omitted).

[96] *See, Hawkes v. Colvin*, 2014 WL 129341, at *1, *6 (S.D. Ga. Jan. 14, 2014) ("[P]ursuant to sentence four of 42 U.S.C. § 405(g), the Acting Commissioner's final decision is **REVERSED**, and this case is **REMANDED** to the Acting Commissioner for further consideration in accordance with the Court's opinion."); *Volk v. Astrue*, 2012 WL 4466480, at *6 (M.D. Fla. Sept. 27, 2012) (same); *Hill v. Astrue*, 2011 WL 679940, at *1, *11 (M.D. Fla. Feb. 16, 2011) ("The Commissioner's decision is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) because the ALJ failed to properly evaluate Claimant's RSD in compliance with SSR 03-2p and, therefore, the decision is not supported by substantial evidence."); *Bernstein v. Astrue*, 2010 WL 746491, at *1 (M.D. Fla. Mar. 3, 2010) (reversing the Commissioner's decision and remanding the matter to the ALJ pursuant to sentence four of 42 U.S.C. § 405(g) and § 1383(c)(3) to evaluate plaintiff's RSD in accordance with SSR 03-2p).